1   DAVID W. SHAPIRO (NYSBN  2054054)
    United States Attorney
2   JAY R. WEILL (CSBN 75434)
    Assistant United States Attorney
3   Chief, Tax Division
    EMILY J. KINGSTON (CSBN 184752)
4   Assistant United States Attorney
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102
        Telephone: (415) 436-7000
6   Attorneys for United States of America,
    Internal Revenue Service

7

                    UNITED STATES DISTRICT COURT
8                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
9

    SANDRA M. STICKNEY, Individually and )    Case No. C-01-3990 CRB
10  as a Trustee                         )
                                         )
11              Plaintiff,               )
                                         )    **UNITED STATES' OPPOSITION TO**
12      v.                               )    **PLAINTIFF'S MOTION FOR**
                                         )    **SUMMARY JUDGMENT**
13  INTERNAL REVENUE SERVICE, and        )
    DOES 1 through 10,                   )
14                                       )    Date:  July 19, 2002
                Defendants.              )    Time:  10:00 a.m.
15                                       )    Place: Courtroom # 8, 19th Floor

16                                I.

17                          **INTRODUCTION**

18       The plaintiff has moved for summary judgment asserting that the Internal Revenue

19  Service's (IRS) filing and maintaining of a nominee lien against her with respect to the personal

20  residence she shares with her husband, Charles M. Stickney, is unlawful.  She further asserts that

21  she is entitled to a determination that: (1) She exhausted her administrative remedies with respect

22  to the nominee lien; (2) the position of the IRS in filing and refusing the release the nominee lien

23  was not reasonably justified; and (3) the IRS recorded the nominee lien against her for an

24  improper purpose.  Because each of the plaintiff's allegations is unfounded, the United States

25  respectfully requests that the Court deny the plaintiff's Motion for Summary Judgment.[1]  In

26

27      [1]  Though the United States believes that the facts in this case establish that the subject
28  transmutations and transfers of the Stickney's interests in their residence were fraudulent and

    *United States' Opposition to Plaintiff's*
    *Motion for Summary Judgment*
    *Case No. C-01-3990 CRB*                    1

1  support of this Opposition, the United States submits the following information and discussion

2  and refers the Court to the pleadings already on file in this action, the United States' Motion to

3  Amend Answer to Bring Counterclaim and the [proposed] Amended Answer and Counterclaim,

4  and such other arguments or evidence as may be presented to the Court at the hearing on the

5  Motion.  A proposed Order is submitted in accordance with Civil Local Rule 7-3(a).

6  ## II.

7  ## STATEMENT OF FACTS

8  In September, 1995, Sandra Stickney's husband, Charles D. Stickney, in his capacity as

9  general partner of a limited partnership, realized a long term capital gain in the amount of

10  $529,582.00 through the disposition of a parcel of commercial real estate owned by the

11  partnership, upon which he was obligated to pay taxes.[2] *See* 1995 U.S. Individual Income Tax

12  Return of Charles D. Stickney, attached as Exhibit 1 to the Declaration of Emily J. Kingston

13  ("Kingston Decl.").  At the time of the disposition, Charles and Sandra Stickney owned their

14  residence at 3080 Buena Vista Way, Berkeley, California ("residence"), as community property,

15  and had so held such property since 1972.  *See* Affidavit of Sandra M. Stickney ("Sandra

16

17

18  should be set aside, the case is not presently in a posture that the United States may request such relief.  The United States has moved to amend its answer to bring a counterclaim against the

19  plaintiff and join as parties to the action Charles D. Stickney and others who may have interests in the residence, so that all issues relative to the subject property are properly before the Court

20  and the United States may request such relief.  As a part of its Motion, the United States also requested that the Dispositive Motions date be vacated in order to allow the United States to

21  amend so that all issues may be brought before the Court. The plaintiff's present motion, which attempts to obtain determinations on issues that necessarily require, at the least, Charles D.

22  Stickney's presence in this action as a party, and which affect the subject property, illustrates

23  precisely why the Court should grant the United States' Motion to Amend and Vacate and should postpone making a determination with respect to the plaintiff's Motion for Summary Judgment

24  until all issues and parties are properly before the Court.

25  [2]  Though there is some question as to whether the commercial real estate was foreclosed

26  upon or sold, this question does not raise a genuine issue of material fact as it is undisputed that the disposition of this property generated capital gains upon which Charles M. Stickney was

27  liable for taxes.  Remarkably, however, the plaintiff fails to even mention the facts underlying

28  Charles Stickney's tax debts in her Motion.

1    Stickney Aff."), ¶¶ 4-6; Affidavit of Charles M. Stickney ("Charles Stickney Aff."), ¶¶ 4-6.

2          On or about December 15, 1995, Charles and Sandra Stickney purported to transmute the

3    character of their ownership in their residence from community property to tenancy-in-common,

4    separate property interests whereby each allegedly retained an undivided one-half interest in the

5    residence. *See* Sandra Stickney Aff. at ¶¶ 9, 10, and Exhibit A; Charles Stickney Aff. at ¶¶ 8-10,

6    and Exhibit A.  Though notarized, the transmutation document, entitled "Declaration and

7    Agreement Confirming Interests in Property and Transmuting the Character of Certain Real and

8    Personal Property," was never recorded. *See* Exh. A to Stickney Affs.; Kingston Decl. at ¶ 3.  As

9    a part of the purported transmutation of their interests in the residence, on or about December 28,

10   1995, the Stickneys recorded executed Grant Deeds whereby they granted to themselves

11   separately undivided one-half interests in the residence. *See* Sandra Stickney Aff. at ¶ 11 and

12   Exhs. B and C; Charles Stickney Aff. at ¶ 11, 12, and Exhs. B and C.

13         On or about December 27, 1995, Sandra Stickney then purported to create the Sandra M.

14   Stickney Revocable Trust. *See* Sandra Stickney Aff. at ¶ ¶12-14, Exhs. D.  Under the trust

15   document, Sandra Stickney, as settlor, purported to transfer her separate one-half interest in the

16   residence to the trust, naming herself as sole trustee and beneficiary. Id.  On December 28, 1995,

17   Charles Stickney also then purported to create an irrevocable trust.  *See* Charles Stickney Aff. at

18   ¶¶ 13, 14, Exh. F.  Under his trust document, entitled "Charles D. Stickney Personal Residence

19   Trust Agreement" ("Agreement"), Charles Stickney, as settlor, purported to transfer his separate

20   one-half interest in the residence to the irrevocable trust, naming Sandra Stickney as the sole

21   trustee, and himself as the principal beneficiary. Id.  Pursuant to the Agreement, Charles Stickney

22   allegedly retained an interest in the residence for a term of either 15 years, or upon his death,

23   whichever came first; the remainder of his interest was to go to the couple's children. *See* Exh. F

24   to Charles Stickney Aff.  No consideration was stated in the Agreement for the transfer. Id.  On

25   December 28, 1995, the Stickneys filed executed Grant Deeds whereby they each transferred

26   their undivided one-half interests in the residence to Sandra Stickney as the trustee of their

27

28

1    respective trusts.[3] *See* Stickney Affs., Exhs. E, G.

2       Following the purported transmutation of their interests in, and transfers related to, the

3 Stickney's residence, the Stickneys filed separate U.S. Individual Income tax returns for taxable

4 year 1995. *See* Sandra Stickney Aff. at ¶ 28; Charles Stickney Aff. at ¶ 22.  Charles Stickney

5 reported the capital gains he realized from the disposition of the commercial real estate on his

6 1995 return, but did not pay the taxes due. *See* Exh. 1 to Kingston Decl.; Certificate of

7 Assessments and Payments attached as Exhibit 2 to Kingston Decl.; Charles Stickney Aff. at ¶¶

8 22, 23.  Sandra Stickney paid the taxes due as reflected on her 1995 return.  *See* Sandra Stickney

9 Aff. at ¶ 29.

10       Because Charles Stickney did not pay the taxes reflected due on his 1995 return, on

11 November 25, 1996, the IRS made an assessment against him for the outstanding taxes arising

12 from the capital gains realization in the approximate amount of $125,000. *See* Exh. 2 to Kingston

13 Decl.  Thereafter, the IRS attempted to undertake collection actions to collect Charles Stickney's

14 outstanding taxes.  In a Form 433-A, Collection Information Statement, from Charles Stickney to

15 the IRS dated May 9, 1997, Charles Stickney indicated that his monthly income at that time was

16 $1,080, from Social Security, and that he otherwise had insufficient assets with which to pay the

17 1995 tax debt.  *See* Collection Information Statement, Exh. 3 to Kingston Decl.  Charles Stickney

18 further advised the IRS that as of September, 1996, less than one year after the purported

19 conveyance of his interest in the residence, he had become unable to pay the debt. Id.  The IRS

20 recorded a Notice of Federal Tax Lien against him on or about May 20, 1997. *See* Charles

21 Stickney Aff. at ¶¶ 32, 33, and Exh. H.

22       On or about October 6, 1997, Sandra Stickney requested that the IRS issue a Certificate

23 of Nonattachment with respect to the IRS' lien filed on May 20, 1997.  *See* Sandra Stickney Aff.

24 at ¶ 37, Exh. I.  On December 17, 1997, the IRS denied her request. Id. at ¶ 38, Exh. K.

25       In March, 1998, the IRS recorded a nominee lien against "The Charles D. Stickney

26

27     [3] Plaintiff's counsel, William E. Taggart, was the witness and notary for each of these

28 documents.

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*          4

1   Personal Residence Trust, Sandra M. Stickney, Trustee, as Nominee of Charles D. Stickney," to

2   secure the tax debt owed by Charles Stickney, which lien attached to the residence. Id. at ¶¶ 39,

3   40, Exh. J.  On or about November 30, 1998, Sandra Stickney filed a protest with the IRS against

4   the recording of the nominee lien, and requested its release. Id. at ¶ 41, Exh. L.  On or about

5   January 6, 1999, the IRS denied the protest and request for release of the nominee lien.  Id. at ¶

6   42. Sandra Stickney appealed from the denial to the IRS Appeals Office on January 6, 1999. Id.

7   at ¶ 43.  On January 21, 1999, the Appeals Office affirmed the IRS' denial of her request for a

8   release of the nominee lien. Id. at ¶ 44, Exh. M.  This suit ultimately followed.

9           As of December 15, 2002, the total amount of taxes, including interest and penalties, that

10  will be due and owing by Charles Stickney for taxable year 1995 is $212,242.48. Kingston Decl.

11  at ¶ 6.

12                                        **III.**

13                                    **DISCUSSION**

14      A.      **IMPOSITION OF THE NOMINEE LIEN WAS PROPER**

15          The plaintiff asserts that the imposition of the nominee lien was improper as the transfers

16  of the residence were not fraudulent.  The plaintiff's assertion is incorrect.

17              i.      **The Purported Transmutations of Interest in and Transfers of the**
                        **Residence Were Fraudulent and Must be Set Aside.**
18
19          The Stickney's purported transmutations of their interests in the residence are subject

20  to California's Uniform Fraudulent Transfer Act.  California Family Code § 851.  California's

21  codification of the Uniform Fraudulent Transfer Act is contained in California Civil Code §§

22  3439, *et seq*.  These provisions set forth two bases upon which a conveyance may be judged

23  fraudulent, and thus voidable: (1) Actual fraud; and (2) constructive fraud.

24          With respect to actual fraud, Civil Code § 3439.04 provides:

25              A transfer made or obligation incurred by a debtor is fraudulent as to a
                creditor, whether the creditor's claim arose before or after the transfer was
26              made or the obligation was incurred, if the debtor made the transfer or
                incurred the obligation as follows:
27
                    (a) With actual intent to hinder, delay, or defraud any
28              creditor of the debtor.

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*                     5

(b) Without receiving a reasonably equivalent value in
exchange for the transfer or obligation, and the debtor:

\* \* \* \* \*

(2) Intended to incur, or believed or
reasonably should have believed that he or she
would incur, debts beyond his or her ability to pay
as they became due.

Cal. Civil Code § 3439.04.  Actual intent to defraud must be established by a preponderance of

the evidence.  Rosenthal v. Great Western Financial Sec., 14 Cal.4th 394, 413, 58 Cal.Rptr. 875,

887 (1996).  Under California law, actual intent may be inferred from the circumstances

surrounding the transaction, and the parties' relationship and interests, since ordinarily, the

determinative facts are solely within the knowledge of the debtor.  Bulmash v. Davis, 24 Cal.3d

691, 157 Cal.Rptr. 66 (1979); Slater v. Bielsky, 183 C.A.2d 523. 6 Cal. Rptr. 683 (1960);

Menick v. Goldy, 131 Cal. App.2d 542, 280 P.2d 844 (1955); Burns v. Radoicich, 77 Cal.

App.2d 697, 176 P.2d 77 (1947); Chichester v. Mason, 43 Cal. App.2d 577, 111 P.2d 362

(1941).

The elements relied upon to prove actual intent are referred to as "badges of fraud;" they

are synonymous with the evidence that courts rely upon to establish that a transfer of property

was merely a "nominee" transfer.  These badges of fraud include:

(1)     A transfer made shortly before or after a substantial debt is incurred or in
anticipation thereof;

(2)     The transfer by the transferor of substantially all of his or her assets, leaving
nothing or insufficient assets to satisfy creditors;

(3)     A lack of, or inadequate, consideration;

(4)     A relationship between transferor and transferee, particularly a family
relationship;

(5)     The retention by the transferor of some interest in, or control over, the property
transferred;

(6)     A transfer made in writing only, which does not involve an actual relinquishment
of the property ostensibly transferred.

United States v. Bertie, 529 F.2d 506 (9th Cir. 1976); Heath v. Helmich, 173 F.2d 157 (9th Cir.

1949); Neumeyer v. Crown Funding Corporation, 56 Cal.App.3d 178, 128 Cal. Rptr. 366 (1976);

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*                                6

1  Borrows v. Jorgenson, 158 Cal.App.2d 644, 323 P.2d 150 (1958); Menick v. Goldy, 131 Cal.

2  App.2d 542, 280 P.2d 644 (1955); Fross v. Wotton, 3 Cal.2d 384, 44 P.2d 350 (1935); Hansford

3  v. Lassar, 53 Cal.App.3d 364, 125 Cal. Rptr. 804 (1975); Commerce Bank of Lebanon v.

4  Halladale A Corp., 618 S.W.2d 288, 292 (Mo. App. 1981)(Transfer fraudulent where it took

5  place near time debtor incurred substantial debts, and was made between family members for

6  inadequate consideration).  In applying these indicia of fraud to this case, the evidence supports a

7  showing of "actual intent" to defraud the IRS, within the meaning of the statute.

8        Specifically, Charles Stickney undertook in December, 1995, to place his major asset, his

9  residence, beyond the reach of the IRS, in anticipation of the large capital gains tax liabilities that

10  arose in September of that year from the disposition of the commercial real estate owned by a

11  partnership of which Charles Stickney was the general partner.  It is not necessary that the

12  assessment of the taxes owed be made before the purported conveyance of the property.  The IRS

13  is considered a creditor at the time of the conveyance if the tax is ascertainable and was not paid

14  when due.  In re Serignese, 214 F.Supp. 917 (D.Conn. 1963), *aff'd sub nom*, Goring v. United

15  States, 330 F.2d 960 (2d Cir. 1964).  The tax debt on the disposition of the commercial property

16  in September, 1995, was ascertainable when Charles purportedly conveyed his interest in the

17  residence in December, 1995, and the tax was not paid the following year when he filed his

18  separate tax return.  Thus, the IRS was a creditor at the time of the purported conveyance, and

19  Charles Stickney was clearly aware when he attempted to convey his property that he would be

20  liable for the capital gains tax.

21        In addition, contrary to the plaintiff's unsupported assertion, the transfer was effectuated

22  without any or adequate consideration.  Plaintiff asserts Charles Stickney received valuable

23  consideration for the transfer of the property in an amount equal to the value of the property

24  transferred in the nature of a life estate interest in the residence.  *See* Plaintiff's Motion at p. 11.

25  However, this argument is illusory.  Charles Stickney's alleged life estate interest in the residence

26  had the sole effect of rendering the property inaccessible for the satisfaction of his tax debts.

27  This is evidenced by the facts that: (1) Charles Stickney was unable to pay his 1995 and 1996 tax

28

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*        7

1    liabilities when due, *see* Charles Stickney Aff. at ¶¶ 25, 30; and (2) when the IRS attempted

2    collection activities with respect to the 1995 liabilities, Charles Stickney admitted that he had no

3    assets with which to pay the 1995 liabilities, and that such inability to pay began as early as

4    September, 1996, less than one year after the transfers.  *See* Exh. 3 to Kingston Decl.  Indeed, if

5    the purported life estate interest had any value at all, Charles Stickney could easily have obtained

6    a loan secured by such interest in order to pay his tax liabilities.  The fact that he has not done so,

7    and admits he has no ability to pay his tax liabilities, renders the plaintiff's argument that Charles

8    Stickney received valuable consideration in exchange for his transfer of his interest in the

9    residence to the trust entirely unfounded.[4]

10   　　　Moreover, the property was transferred to a personal residence trust of which Charles

11   Stickney's wife of almost 50 years, Sandra Stickney, was the sole trustee.  If a confidential

12   relationship can be shown to exist, as is the case here, the parties are held to a stricter burden in

13   proving the fairness of the transaction vis-a-vis creditors.  Menick, 131 Cal.App.2d at 547.

14   "Transactions among those who stand in a confidential relationship with the debtor are subject to

15   especial scrutiny.  Attorneys, confidants, physicians, relatives, who have interests in property

16   formerly owned by the debtor, are objects of distrust." Heath, 173 F.2d at 161.

17   　　　And, though the property was allegedly transferred to the trust pursuant to the various

18   transfer documents, Charles Stickney continued to use the property as his primary residence, did

19   not actually relinquish control of or dominion over the property, and was obligated to pay at least

20   one-half of the expenses of the property, though he was ultimately unable to do so.

21   　　　In short, each of the badges of fraud is met here establishing Charles Stickney's actual

22   intent to defraud the IRS.

23   　　　Though it is not necessary to a finding of actual fraud to show that Charles Stickney was

24   insolvent at the time of the alleged transfer, the element of insolvency is key to establishing

25

26

27   　　　[4] Moreover, California Civil Code § 3439.02(d) specifically exempts from the definition of
     "asset" property that was transferred with the intent to hinder, delay or defraud creditors, or
28   in a manner making the transfer voidable.

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*                    8

1    constructive fraud, a finding which is also easily met. California Civil Code § 3439.05 provides:

2              A transfer made ... by a debtor is fraudulent as to a creditor whose
3              claim arose before the transfer was made ... if the debtor made the
                 transfer ... without receiving a reasonably equivalent value in
                 exchange for the transfer ... and the debtor was insolvent at that
4              time or the debtor became insolvent as a result of the transfer....

5    Cal. Civ. Code § 3439.05.  Section 3439.02 indicates that a debtor is deemed or presumed to be

6    insolvent if "at fair valuations, the sum of the debtor's debts is greater than all of the debtor's

7    assets," or if he or she is "generally not paying his or her debts as they become due."  Cal. Civ.

8    Code § 3430.05(a), (c).

9          Though the plaintiff asserts that Charles Stickney was not rendered insolvent by the

10   transfer of the residence, as he retained a life estate interest in the residence, under the statutory

11   definition above, the transfer of the residence clearly rendered Charles Stickney insolvent as his

12   debts, comprised in part of his anticipated tax liabilities, were greater than the amount of the

13   assets he retained.  Moreover, less than one year after the purported transfers, Charles Stickney

14   advised the IRS that he has no assets with which to pay his outstanding tax liabilities, and that his

15   only income source was his monthly Social Security check of $1,080. *See* Exh. C to Kingston

16   Decl.  Indeed, for each of the years 1995 and 1996, Charles Stickney was unable to pay his taxes

17   due. *See* Charles Stickney Aff. at ¶¶ 25, 30.  The IRS could locate no other distrainable assets

18   owned by Charles Stickney.  These facts reflect that Charles Stickney was indeed rendered

19   insolvent by the purported transfer of his interest in the residence, as he thereafter had no assets

20   from which to pay his taxes.

21         The flurry of purported paper transfers of property interests undertaken by Charles and

22   Sandra Stickney in December, 1995, in anticipation of Charles Stickney's tax liabilities arising

23   out of the capital gains realization from the disposition of the commercial real estate in

24   September, 1995, with no consideration being paid, and with no discernable change in the actual

25   circumstances of Charles Stickney's living conditions, served no purpose other than to place the

26   residence beyond the reach of the IRS for the satisfaction of Charles Stickney's undisputed tax

27   liabilities.  The transfers were merely transfers of title only, and rendered Charles Stickney

28

1  insolvent, in that he became unable to pay his just tax debts.  The purported transfers were,

2  therefore, illusory and fraudulent, both actually and constructively, and must be disregarded by

3  the Court.

4          ii.     **Sandra Stickney, as Trustee of the Charles D. Stickney Personal Residence Trust, is the Nominee of Charles Stickney**

5

6          In order to determine whether Sandra Stickney, as Trustee of the Charles D. Stickney

7  Personal Residence Trust, is merely the nominee of Charles Stickney, the Court looks to the

8  same above-enumerated factors with respect to the determination of actual or constructive fraud

9  in the transfer of assets, as well as the following additional factors:

10         1.      Whether the taxpayer paid expenses of the property, such as state property taxes, insurance, maintenance fees, etc.; and

11         2.      Whether the conveyance was recorded.

12         The above-stated facts support the propriety of the filing by the IRS of the nominee lien

13  against Sandra Stickney in her capacity as trustee of the Charles Stickney Personal Residence

14  Trust.  Though the conveyances were recorded, this fact alone does not undermine the

15  conclusion that the transmutations and transfers were fraudulent as to the IRS and that Sandra

16  Stickney, as trustee of the Charles D. Stickney Personal Residence Trust, was merely the

17  nominee of Charles D. Stickney.  In following, the imposition of the nominee lien against Sandra

18  Stickney as trustee of the Charles D. Stickney Personal Residence Trust was appropriate, and the

19  transfers should be disregarded such that the IRS can seize the residence to satisfy Charles

20  Stickney's tax debts. *See e.g.,* Towe Antique Ford Foundation v. IRS, 999 F.2d 1387 (9th Cir.

21  1993)

22     B.     **SANDRA STICKNEY EXHAUSTED HER ADMINISTRATIVE REMEDIES**

23

24         The plaintiff asserts that she exhausted her administrative remedies with respect to

25  attempting to obtain a release of the nominee lien directly from the IRS.  The United States does

26  not dispute this assertion, but questions the relevance of such argument in this proceeding.

27     C.     **THE IRS' POSITION WAS REASONABLY JUSTIFIED**

28         The plaintiff asserts that the IRS was unreasonable in filing the nominee lien and

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*                    10

1  thereafter refusing to release it.  For the reasons reflected in the discussion in Section III.A.,

2  which will not be repeated here, the IRS' position in filing the nominee lien and thereafter

3  refusing to release it, was clearly justified.

4  **D.    THERE IS NO EVIDENCE OF IMPROPER MOTIVE ON THE IRS' PART**

5      The plaintiff asserts that the IRS filed the nominee lien against her in order to punish her.

6  In support of this unfounded assertion, the plaintiff points to the "chronology of the events that

7  have transpired between Sandra M. Stickney and the Internal Revenue Service beginning in the

8  summer of 1997," in particular, the fact that the nominee lien was recorded after the plaintiff

9  requested a Certificate of Nonattachment. *See* Plaintiff's Motion at p. 18.

10     The plaintiff is correct in stating that when she requested a Certificate of Nonattachment,

11 the IRS first became aware of the fact that the plaintiff, as trustee of the two trusts, held all legal

12 title to the residence. Id.  Prior to that time, the IRS was not aware that Mr. Stickney's interest in

13 the subject property had been transferred.  When the plaintiff brought these facts to the attention

14 of the IRS, it took the appropriate step of filing the nominee lien, as the circumstances led to the

15 reasonable conclusion that the purported transmutations and transfers were fraudulent and that

16 imposition of a nominee lien was appropriate.

17     The plaintiff's assertions that the IRS is out to punish her and that the nominee lien was

18 not recorded to collect income taxes owed by Mr. Stickney is simply incorrect and completely

19 unfounded.  Rather, the IRS has been from the outset attempting to collect on a significant lawful

20 debt owed by Charles Stickney, who appears to have taken significant steps to place his

21 distrainable assets outside the reach of the IRS.  That the plaintiff acquiesced in these efforts and

22 is now caught up in her husband's inappropriate attempts to avoid the payment of a lawful debt is

23 her own failing, and does not establish any improper motives whatsoever on the part of the IRS.

24 If there are any improper motives present in the circumstances underlying this case, they rest

25 entirely with the Stickneys, who have taken extraordinary, and we believe fraudulent, measures

26 to shield their assets from Charles' Stickney's undisputed tax liabilities.  The Court should not

27 allow such measures to stand intact and should determine that the purported transmutations and

28

*United States' Opposition to Plaintiff's*
*Motion for Summary Judgment*
*Case No. C-01-3990 CRB*          11

1    transfers were fraudulent.

2                                            IV.

3                                    **CONCLUSION**

4            For the foregoing reasons, the United States respectfully requests that the Court deny the

5    plaintiff's Motion for Summary Judgment.

6                                                    Respectfully submitted,

7                                                    DAVID W. SHAPIRO
                                                     United States Attorney
8

9    Dated:  June 28, 2002              By:      /s/ Emily J. Kingston
                                                  EMILY J. KINGSTON
10                                                Assistant U.S. Attorney

11                                                Attorneys for the Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  DAVID W. SHAPIRO (NYSBN  2054054)
   United States Attorney
2  JAY R. WEILL (CSBN 75434)
   Assistant United States Attorney
3  Chief, Tax Division
   EMILY J. KINGSTON (CSBN 184752)
4  Assistant United States Attorney
       450 Golden Gate Avenue, Box 36055
5      San Francisco, California 94102
       Telephone: (415) 436-7000
6  Attorneys for United States of America,
   Internal Revenue Service
7
                    UNITED STATES DISTRICT COURT
8             NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
9
   SANDRA M. STICKNEY, Individually and )    Case No. C-01-3990 CRB
10 as a Trustee                         )
                                        )
11            Plaintiff,                )
                                        )
12        v.                            )
                                        )
13 INTERNAL REVENUE SERVICE, and        )
   DOES 1 through 10,                   )
14                                      )
              Defendants.               )
15 _____  )
16
          **UNITED STATES' OPPOSITION TO PLAINTIFF'S
17         MOTION FOR SUMMARY JUDGMENT**
18             **Date:  July 19, 2002
               Time:  10:00 a.m.
19             Place:  Courtroom # 8, 19th Floor**
20
21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2

**PAGE**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

III.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

A.   IMPOSITION OF THE NOMINEE LIEN WAS PROPER . . . . . . . . . . . . . . . . . 5

6

i.   The Purported Transmutations of Interest in and Transfers of the
Residence Were Fraudulent and Must be Set Aside. . . . . . . . . . . . . . . . . 5

7

8

ii.   Sandra Stickney, as Trustee of the Charles D. Stickney Personal
Residence Trust, is the Nominee of Charles Stickney . . . . . . . . . . . . . . 10

9

B.   SANDRA STICKNEY EXHAUSTED HER ADMINISTRATIVE
REMEDIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10

11

C.   THE IRS' POSITION WAS REASONABLY JUSTIFIED . . . . . . . . . . . . . . . 10

12

D.   THERE IS NO EVIDENCE OF IMPROPER MOTIVE ON THE IRS'
PART . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF POINTS AND AUTHORITIES

2

<u>CASES</u>                                                                    <u>PAGE</u>

3

<u>United States v. Bertie</u>,
    529 F.2d 506 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4

<u>Borrows v. Jorgenson</u>,
    158 Cal. App. 2d 644, 323 P.2d 150 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

<u>Bulmash v. Davis</u>,
    24 Cal. 3d 691, 157 Cal. Rptr. 66 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

7

<u>Burns v. Radoicich</u>,
    77 Cal. App. 2d 697, 176 P.2d 77 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8

<u>Chichester v. Mason</u>,
    43 Cal. App. 2d 577, 111 P.2d 362 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9

10

<u>Commerce Bank of Lebanon v. Halladale A Corp.</u>,
    618 S.W.2d 288 (Mo. App. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

<u>Fross v. Wotton</u>,
    3 Cal. 2d 384, 44 P.2d 350 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12

13

<u>Hansford v. Lassar</u>,
    53 Cal. App. 3d 364, 125 Cal. Rptr. 804 (1975) . . . . . . . . . . . . . . . . . . . . . . . 7

14

<u>Heath v. Helmich</u>,
    173 F.2d 157 (9th Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

15

16

<u>Menick v. Goldy</u>,
    131 Cal. App. 2d 542, 280 P.2d 844 (1955) . . . . . . . . . . . . . . . . . . . . . . . . 6-8

17

<u>Neumeyer v. Crown Funding Corporation</u>,
    56 Cal. App. 3d 178, 128 Cal. Rptr. 366 (1976) . . . . . . . . . . . . . . . . . . . . . . . 6

18

19

<u>Rosenthal v. Great Western Financial Security</u>,
    14 Cal. 4th 394, 58 Cal. Rptr. 875 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20

<u>In re Serignese</u>,
    214 F. Supp. 917 (D.Conn. 1963),
    affd sub nom, <u>Goring v. United States</u>, 330 F.2d 960 (2d Cir. 1964) . . . . . . . . . . . . . . 7

21

22

<u>Slater v. Bielsky</u>,
    183 C.A.2d 523, 6 Cal. Rptr. 683 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23

24

<u>Towe Antique Ford Foundation v. IRS</u>,
    999 F.2d 1387 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25

26

27

28

1   **STATUTES**

2   Cal. Civ. Code § 3430.05(a), (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3   Cal. Civ. Code § 3439, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

4   Cal. Family Code § 851   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28